Good afternoon, your honors. May it please the court, counsel, I'm Mark Fisher from the public defender's office and I'm representing the defendant in this case, Clarence Thomas. Mr. Thomas was convicted in a jury trial of first degree murder. Specifically, the jury found that on January 19, 2010, he stabbed and killed his wife Martha Thomas, knowing his conduct was likely to result in death or great bodily harm. The jury also found that his conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Thomas was sentenced to a term of natural life imprisonment. The three issues are raised on appeal. In all three issues, the defendant respectfully asked this court to reverse his conviction and to remand the cause for a new trial. He does so in issue one because the trial judge abused his discretion in denying the defendant's repeated requests for appointment of standby counsel after the defendant elected to proceed pro se. He seeks this relief in issue two because he submits the judge abused his discretion by denying defendant's requests for appointment of an investigator after he elected to proceed pro se. And in issue three, he seeks a new trial because the judge imposed an extreme and unwarranted sanction for a discovery violation. Because the defendant failed to provide written pretrial notice of his intent to raise the affirmative defense of self-defense, the judge precluded the defendant from eliciting any testimony about self-defense or from arguing to the jury that he had acted in self-defense. And I intend to address all three of these issues. The defendant submits the record on appeal shows that he was completely in over his head in attempting to represent himself and that he was in need of outside assistance in order to accomplish basic tasks in order to prepare his case for trial. Now, perhaps somewhat ironically, this court previously reversed Mr. Thomas' conviction following his first trial because at the first trial, judge shouted and refused to allow him to proceed pro se. On the other hand, Judge Corey allowed him to proceed pro se. The defendant acknowledges that the defendant who decides to represent himself certainly takes it upon himself to do the things a lawyer would do in order to prepare a defense to prepare his case for trial. And if the defendant makes an unwise decision to represent himself, he of course has only himself to blame. Nonetheless, the law allows the judge within his Mr. Thomas asked the judge on several occasions to appoint standby counsel. And he also asked for appointment of an investigator. In the end, the judge refused to do either of those things. The defendant submits the judge thereby abused his discretion. Now, one of the tasks the defendant sought to accomplish prior to trial was to interview witnesses. The problem was he was in the jail and unable to post bond. Even the judge recognized that the defendant being in jail was unable to interview witnesses by himself. He therefore asked the judge in the alternative for standby counsel or an investigator to interview witnesses. Personally, I think that's probably the request. The defendant was never able to interview witnesses. Did the defendant submit a written request for the appointment of an investigator? He submitted a written request for an investigator and at least several oral requests for appointment of standby counsel. If he did request the appointment of an investigator in writing, could you submit some documentation to the court on that point? I was not able to find that in the record. I believe the trial court instructed him to file a written motion. And if there is one, I have missed it. My recollection may be incorrect. Of course, your honors have the record. I have a little more record than your honors have. Another goal that the defendant attempted to achieve prior to proceeding to trial in this case was to subpoena witnesses and to subpoena cell phone records. In the end, he apparently did not issue the appropriate subpoenas. That is the type of ministerial task that certainly standby counsel could have assisted him with. Another thing he told the judge on multiple occasions before the case... What witnesses would he have called to testify that did not testify during the trial? We don't know. Unfortunately, the only witnesses who did testify were witnesses who were called by the prosecution. The judge, at a couple of junctures, told the defendant to submit a list of witnesses who he might call to trial. The defendant's response, which I think was somewhat logical, was it would be difficult for him to do that without first having the opportunity to interview witnesses. In the end, he did not submit a list of witnesses who he might call to trial. He also told the judge that he thought it important that there be forensic testing on the clothes that he and his wife wore on the night in question. He didn't file a specific motion. He didn't file specific paperwork. In the end, there was no forensic testing, at least not on the clothes that he was requesting. Again, that's the type of ministerial task, filing a motion so that this could be done, that I believe standby counsel could have assisted him with. In addition, at the heart of issue three was the defendant's failure to submit a written pre-trial notice of the affirmative defense of self-defense that he wished to present. Again, that's the type of thing that standby counsel could have assisted him with. Now, in People v. Gibson, the Illinois Supreme Court identified... Excuse me. When he did have trial counsel during the first trial, was self-defense presented as an affirmative? It was not presented. Now, interestingly, in the opening statement of that first trial, the assistant public defender told the jury they might hear evidence of self-defense. No such evidence was actually presented at the first trial. So, why would the result be different if we send it back for the appointment of standby counsel? Well, it's apparent from the entire record here that defendants' difficulties or disagreements with his prior attorneys... And here we're talking about Mr. Lowe, who represented him at his first trial, and Mr. Loeffel, who actually was originally appointed to represent him prior to this trial, but was then relieved when defendant elected him to proceed pro se. The record indicates that his disagreements with prior counsel dealt with a disagreement over evidence to present over the defense to present. And that is why he elected to proceed pro se. At the first trial, there was little or no defense presented. We had counsel cross-examining witnesses who testified for the prosecution, and argued to the jury that the evidence didn't establish a defendant's credibility or reasonable doubt. There was no particular affirmative defense presented at that trial. And so, apparently, the defendant wanted to present the affirmative defense of self-defense, and that's why he elected to proceed pro se. Unfortunately, we don't really know from this record exactly what the evidence was that he might have presented. So the lack of the offer of proof, too, to make a better record for us is attributable to the defendant's decision to proceed pro se. I suppose, in part, he could have tried to make an offer of proof. At the heart of Issue 3, as I've alluded, is that ultimately the judge precluded even the defendant from testifying at his trial that he had acted in self-defense, as a discovery sanction for failing to notify the judge and the attorneys ahead of time in writing of his intent to raise that defense. Now, the U.S. Supreme Court People v. Gibson identified three factors that judges should consider in deciding whether or not to appoint standby counsel. And the defendant submits those factors supported the defendant's requests in his case. One of those factors is the seriousness of the offense. Here, Thomas was facing a very serious murder charge. He ultimately received the harshest penalty available in the state of Illinois, natural life imprisonment. Another of the Gibson factors is the defendant's background and his abilities to represent himself. In terms of background, he had criminal convictions. He certainly had no legal training. At one point, he argued a motion in this case and told the judge it was the first time he'd ever argued a motion. I think the entire record, including the frivolousness of some of those motions, shows that this man simply did not have the ability to act as his own counsel. The third Gibson factor concerns the complexity of the issues presented in the case or presented by the case. Now, this case may not ultimately have been overly complex from the prosecution's point of view, although there was DNA evidence, which I think in and of itself is somewhat complex. But overall, I think this case was clearly too complex for this man to represent himself. And so I would submit that the Gibson factors support his requests for outside assistance, which he clearly needed to prepare his case for trial. Now, in denying standby counsel, the judge actually said he thought it was a close call. He also said that he believed that appointing standby counsel would be of benefit to the court, perhaps to move the case along more quickly and efficiently, but he nonetheless denied the request. I find it interesting the case law says that a judge has discretion to appoint standby counsel, even over the pro se defendant's objection, if the judge believes it would be beneficial to the court. The judge also said he was denying the request because defendant had had difficulties with his prior attorneys and felt he would therefore believe he would have difficulties with standby counsel. And here, unfortunately, I think the judge misunderstood an important distinction between trial counsel and standby counsel. As I've alluded to previously, the disagreements here arose over the difference of opinion as to the evidence to present, the defense to present. Trial counsel makes the strategic decisions in the case, the evidence to present, the defense to present, witnesses to call, questions to ask. But a defendant, even a pro se defendant who's being assisted by standby counsel, makes all of those strategic decisions. So the dynamic here would have been completely different between the defendant and standby counsel in contrast to his prior relationships with trial counsel. Counsel is two minutes. Thank you. For all of these reasons, the defense admits that the judge abused his discretion. Had he appointed standby counsel and were an investigator, the defendant would likely have been able to present his side, his version of facts to the jury. And after all, that is a fundamental constitutional right. That didn't happen in this case. We therefore ask your honors for a new trial. Well, he also does so in issue three because of this very extreme discovery sanction imposed by the court. Now, it is true that the defendant did not provide a written pre-trial notice of his intent to argue self-defense. But 10 days before trial, he provided verbal notice, told the judge and the state's attorneys at a pre-trial hearing he intended to argue self-defense. As I mentioned previously in response to your honor, Justice Wright's question, at the first trial, although self-defense wasn't presented, the public defender talked about it in an obeying statement. The defendant, in his exercising his right of allocation at sentencing following the first trial, told the judge he acted in self-defense. And the prosecutors who prosecuted this case also prosecuted him at the first trial. And they certainly knew that when the defendant was arrested and questioned by the police, he told them his wife attacked him with a knife. So they knew well in advance that if there was a defense to be presented here, it would likely be self-defense, and again, the defendant reaffirmed that verbally 10 days prior to trial. Under these circumstances, the defendant admits that the sanction was not necessary. It was harsh in the extreme. It denied him a fair trial because it prevented him from presenting his side to the jury. And for this reason as well, Mr. Thomas respectfully asked for honors to reverse his conviction and to remand the cause for a new trial. I have a quick question for you, and I apologize. I know you submitted or filed your brief in May, and so there's been a lot of delay. And I just want to make sure your position is shifting a little bit on the second Gibson factor of whether the case was complexed actually or illegally. I'm just directing you to page 23 of your brief, and on the top of 24, you know what I'm referring to. You indicated in your brief it wasn't complex. Is your position shifting? I think two of the three Gibson factors clearly supported the defendant's request. It's okay if your position is shifting. As I said on the second one, I don't think it was looking at it objectively, at least from an attorney or judge's point of view. At least in terms of the prosecution's case, it does not seem to be complex. So that is certainly not as strong. As I said, for this man, I think almost anything was complex, but I'm not intending to deviate from the argument. I know sometimes we misremember things. Also, when the trial court is factoring into the defendant's prior experience, I'd like you to give me your viewpoint on this defendant had a dry run. He was in the courtroom. He listened to the witnesses testify. Was there a lot of additional evidence that came in that he didn't hear in the address? Call it address. There wasn't additional evidence that came in, but the only evidence that really came in was the evidence presented by the prosecution. And that is, I think, the problem, or at least the potential problem. Yes, he had a dry run with respect to the prosecution's case. And, no, the prosecution's case did not differ greatly, perhaps minutely, from the first trial to the second trial. What he did not have a dry run with at the first trial was any defense that he wished to present, such as self-defense, because, as I say, although the public defender in opening statement at the first trial said to the jury, you might hear evidence of self-defense, no such evidence was presented. So in terms of him attempting to prepare and present a defense in this case, that was something completely new. He did not have a dry run with respect to a defense case. That's the difference. Thank you, Your Honors. Good afternoon, Your Honors. May it please the Court, counsel? I think regarding issue one, the issue of whether the trial judge erred by denying defendants' requests for standby counsel, I'll get into the Gibson factors a little later, but I think there are two items here that I think kind of are pretty common in the record and that kind of overwhelm the record, and they need to be considered on all three of the issues that we're talking about. Now, issue number one is the fact that I think it's pretty clear reading the first trial plus the appeal plus the proceedings in the second trial and the second trial, is that defendant was never satisfied by the state of his representation. He proceeded to trial the first time around with counsel, and then that was a two-day trial, and on both days he requested in some way, shape, or form that he wanted to proceed pro se. He lost that. He was found guilty of that trial. He appealed. In this court, he asked this court to reverse the remand because the judge inappropriately denied his request to go pro se. This court agreed with him, reversed, sent it back. Then somewhat strangely, I would argue, he requested counsel at the outset of the proceedings the second time around, and then almost immediately thereafter, he again decided he wanted to go pro se and represent himself. But the trial court did appoint counsel for him. Yes, yes. Not standby counsel, but a public defender. Yes, I'm going through this just to establish his state of mind here, not to point to the judge and say he was at fault for appointing counsel the second time around. So he appointed counsel. But my question or my point in asking that question is the trial judge gave him an attorney. He had an attorney. Yes. And he said, I don't want one, but I kind of want one. Kind of want one. Yeah, that's what he said. Yes, Your Honor, absolutely right. And the defendant clearly, my two points kind of go hand in hand. Number one, that he was never satisfied with the state of representation. Number two, I think it's important to talk about the fact that he never wanted this to go to trial. He wanted this to be prolonged for as long as he could because I think the evidence was pretty overwhelming in this case.  But the fact that he asked for counsel the second time around, then wanted to go pro se, then wanted a standby counsel, he just always wanted something changing to change things up. I don't know what he hoped to accomplish by doing all this, but as the trial judge suggested many times, many different hearings, that he was trying to play the system. He was trying to manipulate the system. He didn't want this to go to trial. He just kept trying to throw as many things against the wall, see what would stick. And I think the trial judge was aware of this, and I think the record establishes both of my points here, and that's why the trial judge didn't appoint standby counsel. The trial judge did twice admit, twice out of the many times this was discussed, there were a lot of hearings, there were a lot of continuances, the defendant never would answer how long he would need to prepare to be ready for trial. Again, this is all part of his plan to draw this thing out as long as he could. But twice in those hearings, the trial judge was close to appointing standby counsel, but didn't do so because he, I think, correctly observed that the defendant would not have proceeded happily with standby counsel. Again, he had problems with many different attorneys in this case. I believe it was four different attorneys. The way the defendant would respond to the trial judge and the prosecutor is the fact that he objected to basically everything, disagreed with everything the trial judge said below, and obviously had a poor relationship with all of his attorneys that he had. The odds are pretty good, if not certain, that he wasn't going to get along with standby counsel. So we're looking at all of these overriding factors that I think the record clearly reflects. Moving into the Gibson factors, number one, the severity of the offense. This was the most serious offense. It was first degree murder, of course, and people are conceding that. That fact doesn't lie in our favor. As for the second factor, the factual legal complexity of this, the people would point to the defendant's brief and their own brief in arguing that this wasn't a very complex case. There were two eyewitnesses that saw the defendant did what he did. The medical evidence, even though there was DNA evidence, it wasn't complex. The experts would have testified that the victim's blood was found on the defendant's hand and the knife that was found on the defendant's person. Pretty straightforward stuff when we're talking about medical evidence. And the third factor, the ability and experience of the defendant. Judge Wright, I'm very glad you pointed out that this was the second trial in this case. I stress that quite often in my brief because I think it was very important when considering his ability and his experience, the fact that he saw all this one time. He heard it all. He was in the pretrial preparations. He was at trial. He heard everything. And the prosecutors gave the defendant all the evidence that they had. I'm assuming he had a transcript. I don't believe it was flushed out if he had the entire transcript from the first trial, but I know he had some of the testimony. I think it's pretty safe to assume he had the whole trial. He had a dry run. He had all of the ideas of what was going to happen, what the people were going to present. He could have prepped for hours and hours based on what he knew that the prosecution was going to present. And I think that's very important in considering his ability and his experience here. And, yeah, I believe that's also a pretty important point regarding the factual and legal complexity of the fact that he saw it all before. So it wasn't new. He knew what he was getting into. He thought about it. He had plenty of time between the first trial, the direct appeal, and the proceedings on the second trial to think about what he was going to do, whether he was going to represent himself or whether he was going to choose counsel. He had the ability to have counsel. He had counsel. He chose not to do that. I think the trial judge was proper in having defendants stick by his original decision, which he, you know, the law says you must be prepared to do so if you are going to represent yourself. The defendant presented as if he was ready, and I think the trial judge did not abuse his discretion in refusing to appoint stand-by counsel. Regarding the investigator, Judge Wright, I also didn't find anything in the record about filing a written request for the investigator. He was asked many times by the judge, and I believe the prosecution even mentioned it multiple times, the need to put in writing why he needed an investigator. What was this investigator going to do? What was he going to test? Who was he going to investigate? Was he going to interview? And the fact of the matter is the defendant never did it. He never filed this written request. He never complied with the judge's requests and orders to do so. The judge, I don't believe in the record ever said the defendant could not have an investigator. All he said whenever this issue came up was you need to put it in writing what you want and what you want them to do. The judge said he wasn't going to write a blank check. He wasn't going to have CART launched to have an investigator do all the work for him. He said put it in writing, and the defendant didn't. And for that, this is the defendant's failure at this point. And the judge didn't err here because he gave the defendant all possible avenues to file a written request for this investigator, and he failed to do so. Regarding Issue 3, Defense Counsel Mr. Fisher just said that the defendant in open court, he mentioned that he was going to argue self-defense 10 days before. Fine, that's all well and good, but number one, 10 days before is pretty insufficient notice if you ask me. When the trial proceedings went for months and months and months, and there was no question in the record that the defendant was asked many, many times to put in writing if he was going to present an affirmative defense, and he never did. Just like the investigators, you never put it in writing what he was going to do. And one of those occasions at one hearing when they were talking about his potential affirmative defense, and the judge asked him if he was going to put in writing or told him to put in writing, I don't remember the form of the demand or request, but the defendant said he didn't do that at this point because he didn't know which way he was leaning regarding his defense. He actually said that. So it seemed like at some point in the middle of these proceedings he didn't know which way he was going to go. So I said that to highlight the need for filing your notice of affirmative defense, to give the prosecution a notice of exactly what you intend to argue, and the defendant didn't do that. And regarding whether or not this was the least severe sanction available, the people would submit that there was no other effective sanction at this point. The defendant ultimately raised this issue on the second day of trial. But on the first day of trial, he showed up, but he wasn't present for any of it because just like pretty much every other hearing in this case, he was difficult and standoffish and he didn't want to go along with anything that was happening. And so he decided that the first day of trial went along while he was, I believe, in a back room or something. Then he comes out the second day of trial and says once the people's case in chief ends, he wanted to present self-defense. Well, the people would submit this is the wrong time to do it. If there was any possible continuance, I think that's what the defendant is asking. There should have been a continuance for the defendant to get the evidence and the testimony ready to present his self-defense defense. People would submit that's wildly unfair to the state and all the legwork and the prep that they did. They already put on the case in chief to now ask them and the jury and the judge and everybody involved to put this on hold while the defendant subpoenas witnesses and interviews people. I think that's an unrealistic request. And again, based on the proceedings that happened below, the people would submit there's no guarantee that even if he was given this continuance to compile the evidence of self-defense, that he would have actually did it. He didn't do it for, again, months and months and months when he had the chance to do it. The odds that he was going to do it, again, they're slim to none. And for that reason, the judge was proper in preventing the defendant from presenting his evidence of self-defense, again, on the second day of trial. So for all those reasons, the people would submit that the trial judge properly denied standby counsel, denied request for investigator, and denied the defendant the ability to present his self-defense defense on the second day of trial. If there are any other questions, I'd be happy to answer them. Thank you. Mr. Fisher, are you here by mail? Your Honor, beginning if I may with issue three. Counsel argues, well, the defendant gave verbal notice, but he only did so ten days before trial. That didn't give the state enough time. When the state argued on the second day of trial that the defendant should be precluded from presenting any testimony or argument that he had acted in self-defense, state didn't argue, well, we received verbal notice ten days ago, but that wasn't sufficient time. That was not the state's argument. The state's argument was simply that the defendant had not provided written notice. And at that pre-trial hearing where the defendant gave the verbal notice, the judge at that point didn't say, oh, it's too late. No, the judge said, well, give us a final written notice. So the argument seems to have changed a little bit on appeal. But, again, there was verbal notice ten days before. And, frankly, I think it elevates form over substance to say, well, you've given us verbal, but if you don't give us written, we're not going to let you do it. But as I argued previously, the same state's attorneys prosecuted Mr. Thomas at his first trial. And they certainly put on notice there that if there was a defense, it was self-defense. So they knew long before ten days before trial that that's something the defendant might present here. But I mentioned previously the defendant has a constitutional due process right to present his version of facts to the jury outside of the tally case in 2014 out of the Fifth District in the opening brief. So when a judge is considering a sanction for a discovery violation to be imposed upon the defendant, he has to be careful, especially careful in a criminal case, so as not to interfere with that due process right. And the state argues, well, there was no other effective sanction. I would submit there simply was no need for any sanction whatsoever under the facts of this particular case. With respect to the second issue, counsel correctly points out that the judge never specifically said he was denying an investigator. But the fact of the matter is the record shows the defendant more than once expressed his belief that he needed an investigator, and the judge didn't grant that motion, so he in effect denied it. Now, again, I think as lawyers and judges, we're used to written motions. And the judge here said put it in writing. Well, he basically told the judge what he needed the investigator for. That was to interview witnesses. The judge at one point, as the case came closer to trial, the judge said when you're sitting in the county jail, how are you going to be able to interview witnesses? And the defendant said I'm still trying to figure that out. That was his response after he, at prior hearings, had said I need outside assistance to interview these witnesses. With respect to the first issue, it is certainly true that the judge appointed counsel to represent Mr. Thomas at the beginning of proceedings on rule end prior to trial number two. I think it's apparent from the record once again that his difficulties with his attorneys concerned a difference of opinion as to what evidence and defense to present. And it's apparent to me, clearly in the record, I think it's at least a logical reading of the record, that his hope, Mr. Thomas' hope, was that new trial counsel would see it his way. He specifically asked Judge Corey, please don't give me Mr. Lowe because he represented me at the first trial, wouldn't do what I wanted him to do. So he was hopeful the new counsel would see it his way. Now, counsel mentioned perhaps there were four attorneys, and that's not exactly correct. There were three, but really there were two, and let me explain. Just one minute. Thank you. Mr. Lowe represented him at trial number one. Ms. Bailey was initially appointed at trial number two. She became sick and had to withdraw. Then Mr. Loweful was assigned, and then there was a disagreement with Mr. Loweful, and then the defendant decided to proceed pro se. So it was really just two attorneys that he had disagreements with. And again, as I mentioned before, the dynamic between a pro se defendant and standby counsel is completely different than that between a defendant and trial counsel because the pro se defendant makes those strategic decisions. Counsel says, well, the defendant had plenty of time to think about what he was going to do. Yeah, I'm sure he did have plenty of time. The problem is there were things he wanted to do and he couldn't do them. He couldn't interview witnesses. He was unable to submit the appropriate subpoenas and request for forensic testing. So he knew what he wanted to do, but in effect his hands were tied behind his back. For all of these reasons, he respectfully asks your honors for the reasons set forth in Issues 1 and 2 and 3 individually or cumulatively to reverse his conviction and remain for a new trial. One final question for you. You keep mentioning that 10 days before trial the defendant discussed this affirmative defense and the state knew about it. The state, in fact, filed a motion eliminating evidence about the victim's character. At the end of that hearing, the judge instructed the defendant to put it in writing. If you want this stuff to come in as self-defense, put it in writing. He didn't. So your client didn't put it in writing. What prohibited him from doing that much? I have no answer for you, Your Honor. I have absolutely no answer for you, Your Honor. Again, I think that's the type of ministerial task that a standby counsel could have helped him with, but I have, on this record, I have no answer for you, Your Honor. Okay, I appreciate that. Thank you. Thank you, Your Honor. Thank you both for your argument today. We will take this matter under five minutes. The bench with the ribbon is positioned at a short bed. Now we'll take a short recess for the bench.